**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

WESTERN SURETY COMPANY                                        PLAINTIFF

V.                                                                    NO. 1:24-CV-76-DMB-DAS

COOK COGGIN ENGINEERS,
INC.; KYLE STRONG, P.E.; and
M. CARRSON NEAL, P.E.                                              DEFENDANTS

KYLE STRONG, P.E. and
M. CARRSON NEAL, P.E.                                  THIRD-PARTY PLAINTIFFS

V.

CHICKASAW COUNTY,
MISSISSIPPI                                        THIRD-PARTY DEFENDANT

<u>**OPINION AND ORDER**</u>

Western Surety Company sued two engineers and their engineering firm asserting negligence and subrogation claims based on allegations that the engineers negligently approved payments to its principal for work on a Chickasaw County project. The defendants move for judgment on the pleadings on all claims against them. Because based on the operative complaint's allegations, the Court cannot conclude at this stage that Western Surety's claims are barred by the Mississippi Tort Claims Act or that the borrowed-servant doctrine shields the engineering firm from liability, and because Western Surety's payments were not voluntary, the motion for judgment on the pleadings will be denied.

**I
<u>Relevant Procedural History</u>**

On May 19, 2025, Western Surety Company filed a third amended complaint in the United States District Court for the Northern District of Mississippi against Cook Coggin Engineers, Inc.,

Kyle Strong, P.E., and M. Carrson Neal, P.E.[1]  Doc. #77.  Western Surety asserts negligence and subrogation claims based on allegations that Strong and Neal improperly approved payments to its principal, Cadamy Contracting, LLC, for work on a Chickasaw County project.  *Id.*  On May 30, the defendants answered the third amended complaint, including as affirmative defenses that Western Surety's claims are barred by the Mississippi Tort Claims Act and Western Surety's payments to the County were voluntary.[2]  Doc. #81.

On August 26, the defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to all claims against them.  Doc. #101.  Western Surety responded in opposition on September 4,  Doc. #108; and the defendants replied on September 11, Doc. #112.

## II
## Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard to evaluate a motion under Rule 12(c) is the same as a motion under Rule 12(b)(6).  *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022).  For a complaint to survive a Rule 12(c) motion, it must "contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face."  *Id.* (internal citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[1] Western Surety's April 22, 2024, original complaint named only Cook Coggin and Strong as defendants and asserted only a negligence claim.  Doc. #1.  With leave granted by United States Magistrate Judge David A. Sanders, Western Surety filed a first amended complaint on October 16, 2024, adding a subrogation claim; and a second amended complaint on January 23, 2025, adding Neal as a defendant.  Docs. #23, #40.  Following United States Senior District Judge Sharion Aycock's recusal on February 18, 2025, which resulted in the assignment of this case to the undersigned district judge, Western Surety amended its complaint a third time pursuant to the Court's May 15 order to show cause why the case should not be dismissed for lack of subject matter jurisdiction.  Docs. #48, #76.  Western Surety's third amended complaint is the governing complaint.

[2] On May 22, Strong filed an amended third-party complaint against the County.  Doc. #80.  On August 20, with leave granted by Judge Sanders, Strong and Neal filed a second amended third-party complaint against the County.  Docs. #94; #95.  Five days later, the County filed an answer and a motion for judgment on the pleadings as to the second amended third-party complaint.  Docs. #98, #99.  The County's motion will be addressed by separate order.

But the Court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (internal citations omitted) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). However, since Rule 10(c) "incorporates into the pleadings all exhibits attached thereto, the district court can consider those documents in deciding a Rule 12(c) motion without converting it into a Rule 56 summary judgment motion." 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1371 (3d ed. 2024); *see Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *2 (5th Cir. Jan. 4, 2022) ("In our *de novo* review of the grant of a Rule 12(c) motion, we consider 'the contents of the pleadings, including attachments thereto.'") (emphasis in original) (quoting *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015)).

"To obtain a dismissal at the Rule 12(c) stage based on an affirmative defense, the successful affirmative defense must appear clearly on the face of the pleadings." *Anderson v. Octapharma Plasma, Inc.*, No. 3:19-cv-2311-D, 2021 WL 1894689, at *7 (N.D. Tex. May 11, 2021) (quoting *Cochran v. Astrue*, No. 3:11-cv-1257-D, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011)); *see Boyd v. Merit Health Grp. Hosp.*, No. 3:23-cv-313, 2024 WL 606242, at *2 (S.D. Miss. Jan. 19, 2024) ("[D]ismissal under Rule 12(c) 'may be appropriate based on a successful affirmative defense that appears on the fact of the complaint.'") (quoting *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017)).

### III
### Relevant Factual Allegations

On or about June 4, 2014, Chickasaw County, Mississippi, entered into an agreement for certain engineering services to be performed by M. Carrson Neal, who at the time was a principal

in Cook Coggin Engineers, Inc. Doc. #77 at 2. On July 22, 2014, the County entered into a separate contract with Cook Coggin designated as an Agreement for General Engineering Services. *Id*. at 3; Doc. #77-6.[3] Neal and/or Cook Coggin prepared the plans and specifications for that project designated as LSRP-09(3) ("Project"). Doc. #77 at 2–3.

On March 27, 2019, Cadamy Contracting, LLC, submitted a proposal for the Project in the sum of $631,993.55. *Id*. at 3. In connection with Cadamy's proposal for the Project, Western Surety Company executed and issued its bond dated April 1, 2019, as surety for Cadamy. *Id*.; Doc. #77-5.[4]

By February 3, 2020, Neal was no longer serving as County engineer, and the County entered into a contract for continued engineering services with Kyle Strong, also a principal of Cook Coggin. Doc. #77 at 2.

Neal, Strong, and/or Cook Coggin were responsible under their contracts with the County for making sure that all work by Cadamy was performed in accordance with the plans and specifications, and that the quantities appearing on Cadamy's applications for payment were checked and verified as accurate. *Id*. at 4. In each instance when Cadamy submitted an application for payment, Neal, Strong, and/or Cook Coggin signed off on it acknowledging their approval of the same. *Id*. As of September 17, 2020, Neal, Strong and/or Cook Coggin had approved a total of $591,150.55 as payment for Cadamy's work on the Project. *Id*.

Cadamy's performance was terminated on May 25, 2021. *Id*. By letter dated March 11, 2022, the County's attorney sent Western Surety a demand for payment of $571,258.40, based upon Cook Coggin's estimate to bring the Project into compliance with the plans and

---

[3] The exhibits attached to the third amended complaint are misnumbered on the docket. For instance, the docket text indicates that the Agreement for Engineering Services is document #77-7 when it was filed as document #77-6.

[4] The docket text incorrectly indicates this as document #77-6.

4

specifications. *Id*. at 4–5; Doc. #77-9.[5] Western Surety initially advised the County why its demand would not be honored but after extensive negotiations with the County, Western Surety paid the County a total of $631,993.55 to correct and complete Cadamy's work. Doc. #77 at 5.

**IV**
**Analysis**

The defendants argue that Western Surety's negligence claim fails because under the Mississippi Tort Claims Act ( "MTCA"), "there can be no individual claims as to Strong, Neal and/or Cook Coggin, and the only claims against Strong or Neal could be asserted against them in their representative capacity;" the "claims are barred by the MTCA's statute of limitations;" "under the doctrine of *respondeat superior*, Cook Coggin is entitled to the same defenses" as Strong and Neal; and "Strong and Neal were borrowed servants of Chickasaw County." Doc. #102 at 5, 9, 11 (emphasis in original). Regarding Western Surety's subrogation claim, the defendants argue the subrogation claim fails because "the County has no right to pursue claims of negligence and/or breach of contract against a County Engineer for acts occurring in the course and scope of his employment with the County," and "[b]ecause Western Surety's payment was voluntary." *Id*. at 12–14.

Western Surety responds that "[t]he Mississippi Tort Claims Act … does not bar [its] negligence claims [because] Strong and Neal acted as independent contractors, not County employees;" "[t]he borrowed servant doctrine does not apply [because] Strong and Neal … performed work pursuant to Cook Coggin's contract with Chickasaw County and remained under Cook Coggin's control;" and "[its] subrogation claims are not barred[] because [its] payment to the County was compelled under its surety obligations, and Defendants cannot invoke MTCA immunity to defeat these claims." Doc. #108 at 1–2.

---

[5] The docket text incorrectly indicates this as document #77-10.

5

The defendants reply that "[t]he claims asserted against [them] are … governed by the [MTCA]" because "Western Surety attempts to impose liability on [them] for alleged acts or omissions in the course and scope of Strong and Neal's employment as county engineer;" "Strong and Neal performed their work on the subject project on behalf of Chickasaw County, not Cook Coggin;" and "Western Surety voluntary paid Chickasaw County to settle claims against it and its principal" so it "is barred from recovering that amount from the defendants." Doc. #112 at 12.

**A. Negligence**

**1. Mississippi Tort Claims Act**

"The MTCA 'provides the exclusive civil remedy against a governmental entity or its employees for acts or omissions which give rise to a suit.'" *Walton v. City of Verona*, 82 F.4th 314, 321 (5th Cir. 2023) (quoting *Horton ex rel. Est. of Erves v. City of Vicksburg*, 268 So. 3d 504, 508 (Miss. 2018)). Under the MTCA, "[a]n employee may be joined in an action against a governmental entity in a representative capacity … but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." MISS. CODE ANN. § 11-46-7(2).

*a. Employment Status*

The defendants maintain that "Strong and Neal were Chickasaw County employees according to the terms of their contracts with the County;" "by law, a County Engineer on a State Aid Project acts for and on behalf of the County;" and "Mississippi courts have routinely found that claims against county engineers are covered by the MTCA." Doc. #102 at 5 (citing *Jenkins v. Miss. Dep't of Transp.*, 904 So. 2d 1207 (Miss. Ct. App. 2004); *Hodges v. Attala*, 42 So. 3d 624 (Miss. Ct. App. 2010); *Springer v. Ausbern Constr. Co.*, 231 So. 3d 1065 (Miss. Ct. App. 2016); and *McGee v. Neel Schaffer Eng'rs & Planners Inc.*, 350 So. 3d 236 (Miss. Ct. App. 2022)).

Western Surety counters that "[a]pplying the *Miller* test to the facts of this case weighs heavily in favor of finding that Strong and Neal acted as independent contractors, not County employees," because "[its] claims are not related to the Defendants' 'plan or design' of the Project," "neither the State nor the County had any 'involvement in the function' giving rise to the claim" or "exercised any degree of control and direction over the engineers' approval for payment," and "the engineers received compensation from other sources for professional services rendered." Doc. #109 at 8–9 (citing *Miller v. Meeks*, 762 So. 2d 302, 309–10 (Miss. 2000)).

The defendants reply that "the *Miller* test should not be applied to determine whether Strong or Neal were employees or independent contractors of Chickasaw County" because "[they] are engineers, not physicians," and "Neal and Strong were persons acting on behalf of Chickasaw County and therefore were employees of the County for purposes of the MTCA." Doc. #112 at 2, 5 (internal quotation marks omitted).

> The MTCA defines "employee" as:
>
> any officer, employee or servant of the State of Mississippi or a political subdivision of the state, including elected or appointed officials and persons acting on behalf of the state or a political subdivision in any official capacity, temporarily or permanently, in the service of the state or a political subdivision whether with or without compensation … [but t]he term "employee" shall not mean a person or other legal entity while acting in the capacity of an independent contractor under contract to a state or a political subdivision[.]

MISS. CODE ANN. § 11-46-1(f).

"An independent contractor," as opposed to an employee, is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Hill v. City of Horn Lake*, 160 So. 3d 671, 676 (Miss. 2015) (internal quotation marks omitted) (quoting *Richardson v. APAC-Miss., Inc.*, 631 So. 2d 143, 148 (Miss. 1994)). "[T]he difference between a

master-servant relationship and an independent-contractor relationship is that an employer in a master-servant relationship has control of, or the right to control, the employee in the details of the work." *Id*.

"Mississippi law sets forth seven factors to consider in making th[e] determination" of whether a person is an employee or independent contractor:

    (1)  The extent of control exercised over the details of the work;
    (2)  Whether or not the one employed is engaged in a distinct occupation or business;
    (3)  The skill required in the particular occupation;
    (4)  Whether the employer supplies the tools and place of work for the person doing the work;
    (5)  The length of time for which the person is employed;
    (6)  The method of payment, whether by the time or by the job; and
    (7)  Whether or not the work is a part of the regular business of the employer.

*Shelter Mut. Ins. Co. v. Double J Timber Co.*, 844 F. App'x 700, 703–04 (5th Cir. 2021) (quoting *Miss. Emp't Sec. Comm'n v. PDN, Inc.*, 586 So. 2d 838, 841–42 (Miss. 1991)). "The primary consideration, however, 'is the right to or degree of control.'" *Id*. at 704 (quoting *PDN*, 586 So. 2d at 842).

Though the defendants argue Neal and Strong are employees because under statute, to receive state aid funds, a county must "employ[] a county engineer to act for and on behalf of the county as a whole,"[6] that is not enough to establish that county engineers are employees under the MTCA. The MTCA's definition of employee includes persons "acting on behalf of the state or a political subdivision in any official capacity" but *not* "while acting in the capacity of an independent contractor under contract to a state or a political subdivision." MISS. CODE ANN. § 11-46-1(f). While it is undisputed Strong and Neal were acting on behalf of the County, they also must have been doing so as employees rather than independent contractors to fall under the MTCA.

---

[6] Doc. #112 at 5 (emphasis and internal quotation marks omitted) (quoting MISS. CODE ANN. § 65-9-13(b)).

The defendants are correct that Mississippi state courts appear to have assumed county engineers to be employees under the MTCA. *See, e.g.*, *McGee*, 350 So. 3d at 247 (tort claim against county and county engineer in his representative capacity governed by MTCA); *Springer*, 231 So. 3d at 1070 (MTCA's pre-suit notice requirements apply to tortious-interference claim against county engineer); *Jenkins*, 904 So. 2d at 1211–12 (county engineer not liable under MTCA for dangerous condition of which he did not have notice). However, because in those cases the employment status of the engineers was not challenged, they did not address much less determine whether the engineer in each instance was an employee or independent contractor. *See Alias v. City of Oxford*, 70 So. 3d 1114, 1118 (Miss. Ct. App. 2010) ("It is a long-standing legal principle that a decision is not precedent for a legal point if that point is not considered by the reviewing court.") (citing *Craig v. Brown & Williamson Tobacco Corp.*, 200 So. 446, 447 (Miss. 1941)). And because the issue of employment status depends on the specific facts of the relationship in question, the Court declines to presume that just because the county engineers in the cases the defendants cite are employees, all county engineers are employees. Instead, this Court must determine based on the factual allegations in this case whether Neal and Strong were employees or independent contractors.

As to Western Surety's argument that the *Miller* factors should be used to determine whether the engineers were employees or independent contractors, *Miller* does not apply here. The Mississippi Supreme Court adopted the *Miller* test to address challenges in applying the traditional employee versus independent contractor analysis "in evaluating the relationship between [a] University and its faculty physicians who treat private individuals from whom they directly or indirectly receive compensation," specifying that the new test "focuses on the physician-patient relationship" and should be used "to determine the employment status of doctors

like [the defendant there] for the purposes of liability under the MTCA." 762 So. 2d at 310. And since *Miller* was decided, the Mississippi Supreme Court does not appear to have used the *Miller* factors to determine whether non-physicians are employees or independent contractors. *See, e.g.*, *Chisholm v. Miss. Dep't of Transp.*, 942 So. 2d 136, 141 (Miss. 2006); *Patterson v. T. L. Wallace Const., Inc.*, 133 So. 3d 325, 329 (Miss. 2013); *Hill*, 160 So. 3d at 676–77. So, the Court finds *Miller* was not intended to apply to non-physicians and declines to extend its employment status test here. *See Jeanty v. Big Bubba's Bail Bonds*, 72 F.4th 116, 120 (5th Cir. 2023) ("It is well-settled that federal courts sitting in diversity should be slow to expand state law in the absence of any indication of intent by the state courts or legislature.").

As mentioned above, Western Surety alleges that Neal and Strong were employees of Cook Coggin who each entered into an agreement for engineering services with the County. Doc. #77 at 2. Attached to Western Surety's third amended complaint are orders of the County's Board of Supervisors stating that "the Board now desires to employ" Neal and Strong. Doc. #77-1 at PageID 1301; Doc. #77-3 at PageID 1315. The contract between Neal and the County states that Neal agrees to "perform the engineering services in accordance with the State Aid Engineer's Rules and Regulations." Doc. #77-1 at PageID 1302. The contract also specifies that the State Aid Engineer will reimburse the County for Neal's services on a fee basis, based on a fixed percentage of the construction costs of State Aid projects, and the County will distribute those funds to Neal. *Id*. The contract between the County and Strong contains the same language. Doc. #77-3 at PageID 1316. No other contract between the County and Neal, or between the County and Strong, is attached to the governing complaint.

Based on the governing complaint and its exhibits, some factors appear to weigh in favor of independent contractor status—that Strong and Neal engaged in highly skilled work, were

10

engaged in a distinct occupation apart from their work for the County, and were paid by the job rather than on an hourly or salary basis. However, other factors, including whether the County provided any of the materials for their work, and most important, the extent of the County's control over the details of their work, cannot be determined from the complaint's allegations. Although Neal's and Strong's respective contracts with the County provide that they are subject to the State Aid rules and regulations, that is not enough to support a finding at this stage of the litigation that the County had a right to control the details of their work so as to classify them as County employees. *See Heirs & Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist.*, 743 So. 2d 311, 318 (Miss. 1999) (independent contractor relationship existed when contractor required to operate airport in compliance with rules and regulations of airport authority, United States, and State of Mississippi); *Allen v. Choice Hotels Int'l*, 942 So. 2d 817, 821 (Miss. Ct. App. 2006) (independent contractor relationship found despite extensive rules and regulations when employer lacked right to tell contractor "how to conduct its day-to-day business"). At this point, since the Court cannot determine from the pleadings whether Neal and Strong were employees rather than independent contractors, Western Surety's claims against them will not be dismissed based on the MTCA's defenses.

### b. *Plan or Design*

Though not mentioned in the defendants' motion or memorandum, Western Surety argues in its response that its "claims have nothing to do with the engineers' 'plan or design' … but instead are based on the engineers' construction administration and resulting damages." Doc. #109 at 12. "[C]ontest[ing] that assertion," the defendants reply "that particular section of the MTCA does not apply to Western Surety's arguments[ because] Section 11-46-9(1) is a list of activities which do not give rise to liability for governmental entities under the MTCA, not a list of activities for which

11

employees become non-employees." Doc. #112 at 6.

The MTCA exempts governmental entities and their employees acting within the course and scope of their employment from liability "[a]rising out of a plan or design for construction or improvements to public property … where such plan or design has been approved in advance … [and] is in conformity with engineering or design standards in effect at the time of preparation of the plan or design." MISS. CODE ANN. § 11-46-9(1)(p). But since the defendants' motion does not request judgment on the pleadings based on § 11-46-9(1), the Court need not, and will not, address whether the claims arose out of the plan or design of the Project.

### c. Cook Coggin

The defendants submit that "[b]ecause [Western Surety's] claims against Strong and Neal are subject to the MTCA, these same claims asserted by [Western Surety] against Cook Coggin are subject to the MTCA and must be dismissed" because "[a]ll of Western Surety's claims arise out of the alleged acts or omissions of Strong or Neal." Doc. #102 at 10. Western Surety responds that "because … [its] claims are not subject to the MTCA, … neither are [its] claims against Cook Coggin." Doc. #109 at 12.

As explained above, Western Surety's claims against Neal and Strong will not be dismissed based on the MTCA's defenses. So, Western Surety's claims against Cook Coggin will not be dismissed either for the same reason.

### 2. Borrowed servant doctrine

The defendants contend that "the borrowed-servant doctrine applies here and defeats the claims against Cook Coggin" because "Strong and Neal acted on behalf of Chickasaw County— not Cook Coggin—throughout their employment as County Engineers;" "Cook Coggin did not have the right to control Strong and Neal's work on the Project;" and Strong and Neal "voluntarily

accepted employment as County Engineers."[7]  Doc. #102 at 10–11.

Western Surety responds that the borrowed-servant doctrine does not apply because Cook Coggin's contract with the County "show[s] the County was hiring the firm and its agents, not stripping Cook Coggin of responsibility;" "Cook Coggin retained the right of control and supervision;" and "whatever weight might be given to voluntary acceptance is overwhelmingly outweighed by the first two factors."  Doc. #109 at 13, 15, 16.

The defendants reply that "[a]s a matter of law, Strong and Neal, in their capacity as county engineer, acted for and on behalf of Chickasaw County, not Cook Coggin," and "Cook Coggin could not and did not control Neal's or Strong's actions in the course and scope of their employment as county engineer."  Doc. #112 at 8–9.

"The 'borrowed servant' is an exception to the doctrine of 'respondeat superior,' which imposes vicarious liability on employers for the negligent acts or omissions of an employee if committed within the scope of employment."  *Thompson v. Baptist Mem'l Hosp.–Desoto, Inc.*, 247 So. 3d 229, 242 (Miss. 2018).  "Under the borrowed servant doctrine, vicarious liability is transferred from the lending employer to a borrowing employer."  *Id*. (citing *Gorton v. Rance*, 52 So. 3d 351, 359 (Miss. 2011)).  The Mississippi Supreme Court "has identified three criteria for determining whether one is a borrowed servant: '(1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) has the workman voluntarily accepted the special employment.'"  *Gorton*, 52 So. 3d at 359 (quoting *Jones v. James Reeves Contractors, Inc.*, 701 So. 2d 774, 778–79 (Miss. 1997)).  "[I]f the lender is to

---

[7] The defendants did not expressly assert the borrowed servant doctrine as an affirmative defense in their answer to the third amended complaint.  *See generally* Doc. #81.  However, Western Surety's response to the motion for judgment on the pleadings does not raise or rely on such in arguing against the application of the doctrine.  *See, e.g., Skipper v. A&M Dockside Repair, Inc.*, 829 F. App'x 1, 4 (5th Cir. 2020) (borrowed servant affirmative defense raised first time at summary judgment stage not waived when plaintiff had reasonable notice and was not prejudiced).

escape liability, it must appear that the servant is under the borrower's exclusive control and direction as to the work in progress." *Jones*, 701 So. 2d at 778 (quoting *Quick Change Oil & Lube v. Rogers*, 663 So. 2d 585 (Miss. 1995)).

While it is clear Neal and Strong voluntarily accepted employment with the County and performed their work on the Project on behalf of the County, the pleadings do not necessarily establish that they were under the exclusive control of the County. As discussed above, the pleadings are not sufficient for the Court to conclusively determine that the County had enough control over the details of Neal's work and Strong's work to classify them as employees instead of independent contractors. For the borrowed-servant doctrine to apply, the loaned employee must qualify as an employee of the borrower. *See Jones*, 701 So. 2d at 781 (borrowing employer's directions were "insufficient to establish control necessary to transform … independent contractor relationship into a 'loaned servant' relationship").

More, the contract between Cook Coggin and the County indicates that Cook Coggin exercised oversight over County projects, including "general construction overview of the work of the Contractor," "review [of] the Contractor's estimates for progress and final payments," and "final review of the completed construction," Doc. #77-6 at 2; and Western Surety alleges throughout its complaint that Cook Coggin participated in the Project. Because based on the pleadings it is possible that Cook Coggin exercised some control over the work of Strong and Neal on the Project, the borrowed-servant doctrine does not require dismissal of Western Surety's claims against Cook Coggin at this stage.

### B. Subrogation

"Equitable subrogation is a doctrine whereby a surety is permitted to stand in the shoes of the party that benefitted from its performance of the surety obligation in order to prevent unjust

enrichment on the part of a wrongdoer who caused the surety's expense." *Lyndon Prop. Ins. Co. v. Duke Levy & Assocs., LLC*, 475 F.3d 268, 270–71 (5th Cir. 2007) (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136 (1962)) (applying Mississippi law). "Probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." *Id*. at 271 (internal quotation marks omitted) (quoting *Pearlman*, 371 U.S. at 136–37). A "subrogee … obtains no greater right in the thing assigned than was possessed by the [subrogor], but simply stands in the shoes of the latter." *St. Paul Prop. & Liab. Ins. Co. v. Nance*, 577 So. 2d 1238, 1241 (Miss. 1991) (quoting *Ind. Lumbermen's Mut. Ins. Co. v. Curtis Mathes Mfg. Co.*, 456 So. 2d 750, 754 (Miss. 1984)). "Subrogation requires (1) the party to have paid a debt to a third party on behalf of the other party and (2) that he must have been compelled to do so, such as by a surety agreement." *Lyndon*, 475 F.3d at 271 (citing *Prairie State Nat. Bank v. United States*, 164 U.S. 227, 231 (1896)).

### 1. County's right to sue

The defendants argue that "Western Surety's subrogation claims against [them] fail because the County has no right to pursue claims of negligence and/or breach of contract against a County Engineer for acts occurring in the course and scope of his employment agreement with the County" under the MTCA. Doc. #102 at 12–13. Western Surety responds that "[f]or the same reasons that [its] claims against the Defendants are not barred by the MTCA, [its] subrogation claims are similarly not barred by the MTCA." Doc. #109 at 17.

Again, because the issue of whether Strong and Neal were independent contractors will not be decided based on the defendants' motion, and the MTCA does not apply to claims against independent contractors, the defendants' motion will not be granted based on the MTCA as to their subrogation arguments. Regardless, actions for non-tortious breach of express contract are not

15

subject to the MTCA. MISS. CODE ANN. § 11-46-3(1) (providing immunity for "wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract"); *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 60 (Miss. Ct. App. 2011) (citing *City of Jackson v. Est. of Stewart ex rel. Womack*, 908 So. 2d 703, 710–11 (Miss. 2005)). So, Western Surety's subrogation claim based on breach of contract specifically will not be dismissed for that reason.

### 2. Voluntary payment

The defendants argue that because "Western Surety … had no duty to pay the County for damages which were caused by the County, including damages allegedly caused by the County Engineer's negligence … it is an impossibility that Western Surety could have been compelled to pay the County for damages." Doc. #102 at 13. Western Surety responds that "it is undisputed that … [it] was 'compelled' to pay the County who, at the time of the payment, had at least made demand on [it] on two occasions and filed a Complaint against [it] in the Circuit Court of Chickasaw County." Doc. #109 at 17. The defendants reply that "the mere compromise of a disputed claim is not equivalent to the payment of a legal obligation." Doc. #112 at 11–12 (internal quotation marks omitted) (quoting *Colony Ins. Co. v. First Specialty Ins. Corp.*, No. 1:16CV191-LG-RHW, 2017 WL 470902, *3 (S.D. Miss. Feb. 3, 2017)).

"A voluntary payment 'is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him.'" *Southern Ins. Co. v. Affiliated FM Ins. Co.*, 830 F.3d 337, 347 (5th Cir. 2016) (quoting *Glantz Contracting Co. v. Gen. Elec. Co.*, 379 So. 2d 912, 917 (Miss. 1980)). "Under Mississippi law, a volunteer is a stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay." *Id.* (cleaned up) (quoting *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1279 (Miss. 2009)).

16

Here, Western Surety paid the County on Cadamy's behalf and was obligated to do so under its surety agreement. Although the defendants are correct that the compromise of a disputed claim does not create a legal obligation to pay, that rule is not relevant here because the surety agreement created Western Surety's legal obligation to pay. In *Colony*, because the plaintiff insurance company claimed that the party on whose behalf it paid a settlement was not its insured, the court determined it could not have had a legal obligation to pay. 2017 WL 470902, at *2–3. Here, the existence of a surety agreement between Western Surety and Cadamy is undisputed.

That Western Surety claims damages were caused by the negligence of engineers working for the County does not render its payment voluntary and prevent it from asserting a subrogation claim. *See Lyndon*, 475 F.3d at 271 (after paying to complete construction of sewer, contractor's surety could stand in shoes of water and sewer district to assert negligence claims against engineers who inspected contractor's work and approved payments). Consequently, judgment on the pleadings will not be granted in the defendants' favor as to Western Surety's subrogation claims.

## V
## Conclusion

The defendants' motion for judgment on the pleadings [101] is **DENIED**.

**SO ORDERED**, this 25th day of March, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

17