**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

| | |
|---|---|
| **WESTERN SURETY COMPANY** | **PLAINTIFF** |
| **V.** | **NO. 1:24-CV-76-DMB-DAS** |
| **COOK COGGIN ENGINEERS, INC.; KYLE STRONG, P.E.; and M. CARRSON NEAL, P.E.** | **DEFENDANTS** |
| **KYLE STRONG, P.E. and M. CARRSON NEAL, P.E.** | **THIRD-PARTY PLAINTIFFS** |
| **V.** | |
| **CHICKASAW COUNTY, MISSISSIPPI** | **THIRD-PARTY DEFENDANT** |

**<u>OPINION AND ORDER</u>**

After Western Surety Company sued two engineers and their engineering firm asserting negligence and subrogation claims based on allegations that the engineers negligently approved payments to its principal for work on a Chickasaw County project, the engineers filed a third-party complaint against the County seeking a defense and indemnity as to Western Surety's claims against them. The County moves for judgment on the pleadings on all the engineers' third-party claims, arguing that this Court lacks jurisdiction under the Mississippi Tort Claims Act, abstention is warranted, the third-party claims are procedurally barred, and the engineers are independent contractors not entitled to indemnification under the MTCA. Because the Court concludes that it has jurisdiction, abstention is not warranted, the engineers' claims are not procedurally barred, and it is unable to determine at this stage whether the engineers are independent contractors or employees, the County's motion for judgment on the pleadings will be denied.

**I**
**Relevant Procedural History**

On May 19, 2025, Western Surety Company filed a third amended complaint in the United States District Court for the Northern District of Mississippi against Cook Coggin Engineers, Inc., Kyle Strong, P.E., and M. Carrson Neal, P.E.[1]  Doc. #77.  Western Surety asserts negligence and subrogation claims based on allegations that Strong and Neal ("Engineers") improperly approved payments to its principal, Cadamy Contracting, LLC, for work on a Chickasaw County project.[2] *Id.*

On August 20, the Engineers filed a second amended third-party complaint against the County[3] as to Western Surety's claims against them, seeking a declaratory judgment determining the County's duties to defend and indemnify them under the Mississippi Tort Claims Act ("MTCA") and, alternatively, their attorneys' fees and expenses incurred in defending against Western Surety's claims and any judgment amount entered against them in Western Surety's underlying lawsuit.  Doc. #95.

Five days later, the County filed a motion for judgment on the pleadings[4] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c) as to all the Engineers' third-party claims.[5]

---

[1] Western Surety's April 22, 2024, original complaint named only Cook Coggin and Strong as defendants and asserted only a negligence claim.  Doc. #1.  With leave granted by United States Magistrate Judge David A. Sanders, Western Surety filed a first amended complaint on October 16, 2024, adding a subrogation claim; and a second amended complaint on January 23, 2025, adding Neal as a defendant.  Docs. #23, #40.  Following United States Senior District Judge Sharion Aycock's recusal on February 18, 2025, which resulted in the assignment of this case to the undersigned district judge, Western Surety amended its complaint a third time pursuant to the Court's May 15 order to show cause why the case should not be dismissed for lack of subject matter jurisdiction.  Docs. #48, #76.

[2] Neal, Strong, and Cook Coggin moved for judgment on the pleadings against Western Surety on August 26, 2025.  Doc. #101.  The Court denied the motion March 25, 2026.  Doc. #120.

[3] Strong filed a first amended third-party complaint against the County on May 22.  Doc. #80.  With leave of the Court, the second amended third-party complaint added Neal as a third-party plaintiff.  Doc. #95.

[4] Earlier the same day, the County answered the third-party complaint.  Doc. #98.

[5] In its memorandum only, the County asks in the alternative that the Engineers' claims be stayed until the state court action is resolved.  Doc. #100 at 30.  The Court will not consider this alternative request since there is no mention of it in the motion.

Doc. #99. The Engineers responded in opposition on September 8, Doc. #110; and the County replied on September 15, Doc. #114.

## II
## Standards

The County invokes Federal Rules of Civil Procedure 12(b)(1) and 12(c) in seeking dismissal of the Engineers' third-party complaint on arguments that this Court lacks jurisdiction under the MTCA; abstention is warranted under the *Younger*, *Burford*, *Brillhart*, and *Colorado River* doctrines; the Engineers failed to provide MTCA pre-suit notice; the Engineers are not employees entitled to defense and indemnification under the MTCA; and the Engineers waived their MTCA defenses.

It is unclear whether Rule 12(b)(1) is a proper vehicle to raise abstention arguments. Although abstention is related to the exercise of jurisdiction, courts do not abstain under the abstention doctrines raised by the County because they lack subject matter jurisdiction; rather, abstention is a court's decision not to exercise the jurisdiction it possesses.[6] In a 1993 decision, the Fifth Circuit stated that a Rule 12(b)(1) dismissal cannot be sustained based on "abstention doctrines [that] are not exceptions to the federal courts' jurisdiction, but are rather judicially created guidelines defining circumstances in which courts may decline to exercise jurisdiction." *Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (discussing *Pullman* and *Burford* abstention doctrines). However, since then, the Fifth Circuit appears to have accepted

---

[6] *See Weekly v. Morrow*, 204 F.3d 613, 614–15 (5th Cir. 2000) (*Younger* abstention is a "prudential decision not to exercise … jurisdiction which [a court] in fact possesses," not a determination that the court lacks jurisdiction) (cleaned up) (quoting *Benavidez v. Eu*, 34 F.3d 825, 829 (9th Cir. 1994)); *Nevarez v. Nevarez*, 664 F. Supp. 3d 680, 698 (W.D. Tex. 2023) ("Most courts that have considered the issue have concluded that *Colorado River* abstention is non-jurisdictional"); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) ("The District Court's [*Burford*] abstention-based remand order … is not based on lack of subject matter jurisdiction"); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (courts have discretion to abstain under *Brillhart* "even when the suit otherwise satisfies subject matter jurisdictional prerequisites").

abstention as a basis for a Rule 12(b)(1) motion. *See, e.g., Perez v. Tex. Med. Bd.*, 556 F. App'x 341, 342–43 (5th Cir. 2014) (affirming dismissal pursuant to Rule 12(b)(1) based on *Younger* abstention); *Little v. Doguet*, 71 F.4th 340, 348 (5th Cir. 2023) (vacating district court's denial of 12(b)(1) motion to dismiss based on *Younger* abstention).

Because abstention is not based on a *lack* of subject matter jurisdiction, the Court will treat the abstention arguments here as brought pursuant to Rule 12(c).[7] The Court construes the MTCA jurisdictional argument as brought pursuant to Rule 12(b)(1); and the pre-suit notice,[8] employment status, and waiver arguments as brought pursuant to Rule 12(c).

### A. Rule 12(b)(1)

A Rule 12(b)(1) motion asserts a lack of subject-matter jurisdiction. FED. R. CIV. PRO. 12(b)(1). A motion to dismiss under Rule 12(b)(1) is characterized as either "facial" or "factual." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). "Where, as here, the movant mounts a facial attack on jurisdiction based only on the allegations in the complaint, the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (internal quotation marks omitted).

### B. Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard to evaluate a motion under Rule 12(c) is the same as a motion under Rule 12(b)(6). *Templeton v.*

---

[7] Even if the Court analyzed the abstention arguments under Rule 12(b)(1), it would consider the same documents— the Engineers' third-party complaint and the state court filings attached to the County's motion for judgment on the pleadings—and its analysis and conclusion would be the same.

[8] Failure to provide MTCA pre-suit notice is properly analyzed under Rule 12(c) rather than Rule 12(b)(1) because the notice requirements in Mississippi Code § 11-46-11 are not jurisdictional. *Univ. of Miss. Med. Ctr. v. Aycock*, 369 So. 3d 534, 540 (Miss. 2023) (citing *Stuart v. Univ. of Miss. Med. Ctr.*, 21 So. 3d 544, 550 (Miss. 2009)).

*Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022). For a complaint to survive a Rule 12(c) motion, it must "contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Id.* (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the Court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (internal quotation marks omitted) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). However, since Rule 10(c) "incorporates into the pleadings all exhibits attached thereto, the district court can consider those documents in deciding a Rule 12(c) motion without converting it into a Rule 56 summary judgment motion." 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1371 (3d ed. 2024); *see Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *2 (5th Cir. Jan. 4, 2022) ("In our *de novo* review of the grant of a Rule 12(c) motion, we consider 'the contents of the pleadings, including attachments thereto.'") (emphasis in original) (quoting *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015)). Courts may also consider documents referenced in the operative complaint and significant to the claim asserted. *LeBoeuf v. Entergy Corp.*, No. 24-30583, 2025 WL 1262414, at *3 (5th Cir. May 1, 2025) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009)) (addressing 12(b)(6) motion).

In considering a Rule 12(c) motion, "[t]he Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court." *Cole v. Oceaneering Int'l, Inc.*, 666 F. Supp. 3d 590, 595 (E.D. La. 2023); *see Jenkins v. Tahmahkera*,

5

151 F.4th 739, 747 (5th Cir. 2025) ("It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (quoting *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 n. 8 (5th Cir. 2015)). Under Federal Rule of Evidence 201, courts may take judicial notice of documents filed in another court to establish the fact of such litigation but may not take judicial notice of the factual findings of another court. *PNC Bank, Nat'l Ass'n v. 2013 Travis Oak Creek, L.P.*, 136 F.4th 568, 574–75 (5th Cir. 2025).

### III
### Background

#### A. Relevant Factual Allegations

On June 2, 2014, Chickasaw County employed M. Carrson Neal as its county engineer. Doc. #95 at 2. On February 3, 2020, the County employed Kyle Strong as its county engineer. *Id*. The County refused to defend and indemnify the Engineers against Western Surety Company's claims against them which arise out of their alleged acts or omissions in their capacities as county engineers while working on road construction project LSRP-09(3) ("Project"). *Id*.

#### B. State Court Proceedings

On April 8, 2022, the County filed a complaint in the Circuit Court of Chickasaw County, Mississippi, against Western Surety and Western Surety's principal, Cadamy Contracting, LLC, Doc. #99-2[9] at PageID 2194–208. Alleging Cadamy's deficient performance on the Project and Western Surety's refusal to perform its obligations under the surety bond it issued covering Cadamy's performance on the Project, the County asserted against Cadamy claims for breach of construction contract and negligence; and asserted against both Cadamy and Western Surety claims for breach of performance bond, bad faith refusal to perform, and bad faith denial of claim.

---

[9] The County filed relevant parts of the state court record with its motion, noting that they "are matters of public record proper for judicial notice." Doc. #99 at 2. Because, as described above, pleadings filed in state court are matters of public record, the Court takes judicial notice of such.

*Id*. Western Surety answered the state court complaint on June 4. *Id*. at PageID 2212–20. On June 9, Cadamy filed an answer and a counterclaim for breach of contract, alleging that the County delayed the Project, did not pay it for the work it completed, and wrongfully terminated it from the Project. *Id*. at PageID 2222–30.

The County filed an October 12, 2023, first amended complaint adding a Cadamy insurer as a defendant and asserting the same claims against Cadamy and Western Surety. *Id*. at PageID 2314–26. Cadamy answered the first amended complaint on February 26, 2024. *Id.* at PageID 2330–36. Western Surety answered the first amended complaint on March 1, 2024. *Id.* at PageID 2338–48. On April 8, 2024, the County filed a second amended complaint adding two other Cadamy insurers, still asserting the same claims against Cadamy and Western Surety.[10] *Id.* at 2349–70.

**IV**
**Analysis**

The County submits that because the Engineers' claims "are barred by the *Younger* abstention doctrine, *Burford* abstention, *Brillhart* abstention, *Colorado River* abstention, and [its] immunity in addition to other procedural and substantive rules … this Court lacks jurisdiction." Doc. #99 at 2. The Engineers respond that "the MTCA … requires [their] claims to be tried to the court in which the claims against [them] are asserted;" "the various abstention doctrines cited by Chickasaw County are inapplicable;" they "did not have to provide pre-suit notice … before filing their third-party claims;" "[t]he MTCA does not immunize Chickasaw County from [their] claims;" and they "have not waived any MTCA defenses." Doc. #111 at 3. The County replies that "[n]ot only are the Engineers' claims procedurally barred, dismissal is mandated by the clear

---

[10] The County's motion exhibit consisting of relevant state court documents ends with a pleading filed by one of Cadamy's insurers. Doc. #99-2 at PageID 2373–408. Based on the state court docket sheet, it appears the state court action is stayed. Doc. #99-1 at PageID 2193.

language of the Mississippi Tort Claims Act." Doc. #114 at 2 (emphasis omitted).

### A. Jurisdiction

### 1. Mississippi Tort Claims Act

The County argues that because "the issue of whether [it] may be held responsible for the Engineers' actions is already pending before the Circuit Court of Chickasaw County[,] … the Circuit Court of Chickasaw County first obtained and retains jurisdiction of this dispute pursuant to § 11-46-13(1)" of the MTCA, so "the only suit wherein the Engineers could bring their claims … is the state action … pursuant to § 11-46-7(5)." Doc. #100 at 12.

The Engineers respond that "the case at hand is the only suit brought against [them] related to the Project, and their third-party claims are based on the claims asserted against them by Western Surety in this action," so "[their] third-party claims must be tried to this Court, in this suit." Doc. #111 at 5–6.

The County replies that "[t]he MTCA explicitly requires that any claims by an employee for indemnity must be brought in the same suit before the same court where the original MTCA claim was brought against or by the governmental entity," and "[t]his underlying dispute and the claims arising from it were first brought and remain pending in the Circuit Court of Chickasaw County, including claims against the County." Doc. #114 at 2–3 (emphases omitted).

Jurisdiction under the MTCA "shall be in the court having original or concurrent jurisdiction over a cause of action upon which the claim is based." MISS. CODE ANN. § 11-46-13(1). The MTCA specifies that "[a]ny action by a governmental entity against its employee and any action by an employee against the governmental entity for contribution, indemnification, or necessary legal fees and expenses shall be tried to the court in the same suit brought on the claim against the governmental entity or its employee." *Id.* at § 11-46-7(5). Although it appears no court

8

has analyzed this portion of § 11-46-7(5), the nature of an indemnification claim under § 11-46-7(3) makes clear that § 11-46-7(5) does not bar the Engineers' claims.

An employee's right to defense and indemnification arises under § 11-46-7(3), which specifies that "every governmental entity shall be responsible for providing a defense to its employees and for the payment of any judgment in any civil action or the settlement of any claim *against an employee* for money damages." *Id.* at 11-46-7(3) (emphasis added). Because an employee is only entitled to defense and indemnity when there is a claim for damages against the employee, it follows that when an indemnity claim is brought by an employee, the "claim against the governmental entity or its employee" referenced in § 11-46-7(5) must be a claim against the *employee*. Since an employee has no right to indemnity for a claim against the governmental entity, the requirement that an indemnity claim be brought in the same court as the suit against the governmental entity only applies when the *governmental entity* is seeking indemnity from its employee, not the other way around.

Although there are claims against the County in the state court proceeding, there is no suit against the Engineers in that case. Rather, the Engineers' indemnity claims here are based on the suit filed against them in this federal district court. So, to the extent the Engineers are County employees, § 11-46-7(5) requires the Engineers' indemnity claims to be brought in and tried before this federal district court.

### 2. *Younger* abstention

The County argues that *Younger*[11] abstention is required here because "[t]here is an ongoing state proceeding arising from the same subject matter and the same factual allegations as those asserted herein;" "granting the Engineers' request would necessarily require that this Court

---

[11] *Younger v. Harris*, 401 U.S. 37 (1971).

first determine whether the County may be held responsible for [their] actions and whether [their] conduct constituted negligence … [and] in doing that, this Court would interpret a question of purely state law and would make determinations directly affecting the state court proceeding;" and "there is adequate opportunity for the Engineers[] to raise their claims in the state proceedings." Doc. #100 at 14–17.

The Engineers respond that the *Younger* abstention doctrine does not apply here because "the State Court Lawsuit is a civil action, not a criminal prosecution;" the claims asserted do not "implicate[] the judicial function;" and "[b]esides the fact that a state actor filed the State Court Lawsuit, that action is not akin to a criminal prosecution in any respect [and i]nstead … involves causes of action that are typically asserted by one private party against another." Doc. #111 at 7–8 (internal quotation marks omitted) (quoting *Giles v. Shaw Sch. Dist.*, 92 F. Supp. 3d 533, 537 (N.D. Miss. 2015)).

The County replies that because the "purpose of the state court action [is] to enforce Western Surety's bond obligations that are required by statute," "the parallel state court action is assuredly the sort of civil enforcement proceeding contemplated by *Younger* as it was initiated by a state actor … to sanction another party for a wrongful act … and is closely related to the enforcement of state law." Doc. #114 at 4.

"[F]ederal courts are obligated to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989) (*NOPSI*)). "[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refuse to decide a case in deference to the States.'" *Id*. at 73

10

(quoting *NOPSI*, 491 U.S. at 368).

"*Younger* held that 'a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury.'" *Daves v. Dallas Cnty.*, 64 F.4th 616, 624 (5th Cir. 2023) (quoting *Samuels v. Mackell*, 401 U.S. 66, 69 (1971)). *Younger* abstention applies when "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* at 625 (internal quotation marks omitted) (quoting *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012)).

The *Younger* doctrine has been expanded to include civil proceedings in some "exceptional" circumstances, but its application is limited to three categories: "state criminal prosecutions, civil enforcement proceedings[] and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73 (internal quotation marks omitted) (quoting *NOPSI*, 491 U.S. at 367–68).

The first category clearly does not apply here, as the underlying state court proceeding is civil. The third category does not apply either because the state court proceeding does not involve orders uniquely in furtherance of the state court's ability to perform its judicial function comparable to those cited as exemplary of the category. *See NOPSI*, 491 U.S. at 368 (orders involving civil contempt process and requirement to post bond pending appeal implicate third category) (citing *Juidice v. Vail*, 430 U.S. 327, 336 n. 12 (1977), and *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)).

As to the second category, the United States Supreme Court's "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings akin to a criminal

11

prosecution in important respects. Such enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act. In cases of this nature, a state actor is routinely a party to the state proceeding and often initiates the action." *Sprint*, 571 U.S. at 79 (internal citations and quotation marks omitted). In such enforcement actions, the state court action is typically "initiated by 'the State in its sovereign capacity.'" *Id*. at 80 (quoting *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977)).

Although the state court action here was initiated by the County, it is not akin to a criminal prosecution. The County's tort and breach of contract claims against Western Surety and Cadamy are common-law causes of action that could be brought by a private party and do not depend on the County's status as a state actor. While the County argues in its reply that "the purpose of the state court action [is] to enforce Western Surety's bond obligations that are required by statute" and such action "is closely related to the enforcement of state law," Doc. #114 at 4 (citing MISS. CODE ANN. §§ 31-5-3 and 31-5-51), the County's state court claims are not based on such statutes. The existence of statutes regulating performance bonds for public construction projects does not render the County's negligence and breach of contract claims "enforcement actions." So, *Younger* does not apply to the state court litigation, and the Court will not abstain on that basis.

### 3. *Burford* abstention

The County's motion for judgment on the pleadings and its memorandum of authorities each list *Burford*[12] abstention as a reason the Engineers' claims should be dismissed. Doc. #99 at 2; Doc. #100 at 2. But because neither the County's motion nor the memorandum contains any argument explaining why *Burford* abstention applies, the Court declines to consider the matter.[13]

---

[12] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

[13] "*Burford* abstention … is concerned with 'protecting complex state administrative processes from undue federal interference,' to avoid 'disrupting state efforts to establish a coherent policy.'" *In re Entrust Energy, Inc.*, 101 F.4th 369, 393 (5th Cir. 2024) (quoting *NOPSI*, 491 U.S. at 361–62). "The doctrine … applies where a case is 'not a mere

#### 4. *Brillhart* abstention

The County contends that "consistent with *Brillhart*,[14] abstention from a declaratory judgment action … is ordinarily appropriate when the state offers an adequate alternative forum in which to resolve the particular dispute;" and "[a]ll the relevant factors [to determine whether a dismissal is warranted under *Brillhart*] support dismissal here." Doc. #100 at 17–18.

The Engineers counter that *Brillhart* does not apply because "in addition to the declaratory relief [they] seek, they also seek an award of damages," and "Western Surety has also asserted claims for coercive relief." Doc. #111 at 8.

The County replies that "the Engineers simultaneously allege that they 'seek an award of damages' while reaffirming that they are only demanding declaratory relief and not monetary damages when it suits them;" and if the Engineers are not seeking damages, "dismissal is required under *Brillhart* doctrine." Doc. #114 at 5.

"[I]t is well settled in this circuit that a declaratory action that also seeks coercive relief is analyzed under the *Colorado River* standard" as opposed to the *Brillhart* standard. *New England Ins. Co. v. Barnett*, 561 F.3d 392, 396 (5th Cir. 2009). Such is true even if the coercive relief claim is "merely ancillary to [the] declaratory relief claim." *Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 n. 15 (5th Cir. 2005). The only exceptions are "if the claims for coercive relief are frivolous or … were added as a means of defeating *Brillhart*." *Barnett*, 561 F.3d at 396 (citing *Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 n.4 (5th Cir. 2002)). Because the Engineers seek damages in addition to a declaratory judgment, and because there is no suggestion that their claims for damages are frivolous or were added to defeat *Brillhart*,

---

isolated dispute' but 'necessarily affects an entire state regulatory system.'" *Id.* (quoting *Burford*, 319 U.S. at 324) (cleaned up). Even if the Court considered *Burford* abstention, it likely would not apply because there is no state administrative process involved here.

[14] *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

13

the Court will apply the *Colorado River* standard rather than the *Brillhart* standard.[15]

### 5. *Colorado River* abstention

The County argues that "dismissal is proper under *Colorado River*[16] abstention doctrine" because "the state and federal proceedings are substantially parallel, involving the exact same issues over the subject State Aid Road construction with substantially similar parties, and … resolution of the pending claims, counterclaims and cross-claims in the state litigation will dispose of all the claims herein;" and dismissal is warranted "in order to avoid piecemeal litigation, because the Circuit Court of Chickasaw Cou[nty] first obtained jurisdiction over the instant dispute, as no federal law provides the rules of decision on the merits herein, and as the state proceedings are

---

[15] As to the Engineers' argument that *Colorado River* analysis is also required due to Western Surety's claims for coercive relief, it is unclear whether the nature of the relief sought in Western Surety's complaint is relevant in determining whether the third-party complaint should be analyzed under *Brillhart* or *Colorado River*. Although claims for damages outside of the challenged complaint may require *Colorado River* analysis, *see Barnett*, 561 F.3d at 397 (considering counterclaim for coercive relief in determining whether *Colorado River* applies), it does not appear that the Fifth Circuit has addressed such in the context of a third-party complaint. Because the third-party complaint itself includes a demand for damages, the Court need not decide whether the damages sought in Western Surety's complaint would independently trigger application of *Colorado River*.

Even if the Court applied *Brillhart*, it still would not abstain here. Courts have broad discretion in deciding whether to entertain declaratory judgment actions. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993)). Relevant factors in the abstention analysis include:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy[.]

*Id*. (quoting *Travelers*, 996 F.2d at 778). While the County argues that the Engineers' claims could be fully litigated in the state court case even though they are not parties since they could seek intervention and receive a declaration of indemnity, Doc. #100 at 18–19, it would make little sense for the Engineers to seek a declaration of indemnity in the state court case when the only claims against them are in the federal case. Regardless, as discussed above, § 11-46-7(5) of the MTCA requires that they bring their claims against the County in this case, so they could not litigate their claims in the state court case. The Court finds implausible the County's assertions that the Engineers filed their third-party complaint in anticipation of being sued in the state court case, and that they engaged in forum shopping, considering the Engineers filed their third-party complaint only after being sued by Western Surety in this federal district court. And, contrary to the County's argument, there is no indication that considerations of judicial economy and convenience weigh in favor of abstention, especially since the claim for which the Engineers are seeking indemnity is already in federal court.

[16] *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).

adequate to protect the rights of the parties." Doc. #100 at 20–22.

The Engineers reply that *Colorado River* does not apply because "[t]he proceedings at issue here are not parallel" since "[t]he resolution of the State Court Lawsuit … would not dispose of the claims in this federal case;" and "even if the Court finds that the actions are parallel and proceeds with the analysis under *Colorado River*, the Court should deny the County's Motion." Doc. #111 at 9–10.

The County replies that "the state and federal proceedings are substantially parallel and … there is no requirement for 'absolute precision' as the Engineers seemingly suggest." Doc. #114 at 5.

"A *Colorado River* abstention analysis begins with a heavy thumb on the scale in favor of exercising federal jurisdiction, and that presumption is overcome only by 'exceptional circumstances.'" *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018) (quoting *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006)). "Federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.'" *Id.* (quoting *Colorado River*, 424 U.S. at 817). "Discretionary *Colorado River* abstention may be applied when: a state proceeding is ongoing and is parallel to the federal proceeding; and, extraordinary circumstances caution against exercising concurrent federal jurisdiction." *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017) (citing *Colorado River*, 424 U.S. at 817–19). "'Parallel actions' typically involve the same parties, but the identity of the parties is not determinative. Instead, a court may look both to the named parties and to the substance of the claims asserted to determine whether the state proceeding would be dispositive of the concurrent federal proceeding." *Id.* (internal citations and quotation marks omitted) (quoting *Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014)).

15

Here, the state and federal actions are not parallel. Although Western Surety and the County are parties to the state court action, the Engineers are not. And, looking at the substance of the state court claims, there is no indication that resolution of the state court action would resolve the Engineers' claims in this federal case.

While the County argues that resolution of the state court litigation will dispose of the Engineers' claims because all the Engineers' claims are premised upon their argument that they were County employees, the issue of the Engineers' employment status will not necessarily be resolved by the state court litigation. The issue of whether the Engineers were County employees is not raised in any of the state court filings attached to the County's motion, and there are no allegations of wrongful conduct by the Engineers in such filings. *See generally* Doc. #99-2. Based on the state court filings, a determination of whether the Engineers were County employees does not appear to be necessary to resolve the state court litigation. So, the state and federal actions are not parallel, and *Colorado River* does not apply.[17]

### 6. Summary

Because §11-46-7(5) of the MTCA requires the Engineers to bring their claims against the

---

[17] Even if the actions were parallel, the Court still would not find abstention warranted. Abstention is only proper under *Colorado River* in "exceptional circumstances." *Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 462 (5th Cir. 2012) (quoting *Kelly*, 315 F.3d at 497).

> In determining whether "exceptional circumstances" exist, the Supreme Court has identified six relevant factors: (1) assumption by either court of jurisdiction over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the extent to which federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Id*. The factors should be balanced "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id*. (internal quotation marks omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). Here, the absence of assumption of jurisdiction over a res and the fact that the state and federal courts are located in similar geographic areas weigh against abstention. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000). Because there is no danger of inconsistent rulings with respect to a piece of property, the third factor weighs against abstention. *Id*. at 650–51. Although the state court obtained jurisdiction first, and the decision on the merits will be determined entirely by state law, the sixth factor weighs heavily against abstention because the Engineers are required under the MTCA to bring their indemnity claims in this case.

16

County in this federal case, and because none of the abstention doctrines raised by the County apply here, the Court concludes that it has and will exercise jurisdiction over the claims in the Engineers' third-party complaint.[18]

## B. MTCA Defenses

The Engineers' claims are based solely on § 11-46-7(3) of the MTCA. Doc. #95 at 2–3. Section 11-46-7(3) provides that "every governmental entity shall be responsible for providing a defense to its employees and for the payment of any judgment in any civil action or the settlement of any claim against an employee for money damages arising out of any act or omission within the course and scope of his employment." MISS. CODE ANN. § 11-46-7(3). The County is a governmental entity to which the MTCA applies. *Id.* at § 11-46-1(g), (i).

### 1. Pre-suit notice

The County argues that "[a]ll of the Engineers' claims … are procedurally barred" because "[t]he Engineers did not send any pre-suit notice whatsoever to the County" as required by the MTCA. Doc. #100 at 23–24. The Engineers respond that "[s]ince [they] are not a person having a claim under the MTCA, they were not required to provide pre-suit notice to Chickasaw County" because their complaint does not include a "demand to recover damages from a governmental entity as compensation for injuries." Doc. #111 at 13 (cleaned up) (quoting MISS. CODE ANN. § 11-46-11(1) & 11-46-1(a)). The County replies that "the Engineers simultaneously allege that they 'seek an award of damages' on one hand while also asserting that they are only demanding declaratory relief and not monetary damages when it suits them on the other;" and if they are

---

[18] The Court has diversity jurisdiction over Western Surety's claims and supplemental jurisdiction over the Engineers' claims. The County argues for the first time in its reply that the Court should decline to exercise supplemental jurisdiction over the third-party claims. Doc. #114 at 6–8. Because the Court "do[es] not entertain arguments raised for the first time in a reply brief," *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 402 n. 47 (5th Cir. 2022) (internal quotation marks omitted), it will not address this argument.

seeking damages, "dismissal is irrefutably required under § 11-46-11(1)&(2) due to their failure to provide pre-suit notice." Doc. #114 at 10.

The Court is not aware of, and the parties do not cite, any authority addressing whether pre-suit notice is required for claims under § 11-46-7(3). *See Price v. Elder*, No. 1:15-cv-36, 2016 WL 3449909, at *3 (N.D. Miss. June 20, 2016) (noting "dearth of controlling Mississippi, Fifth Circuit, or United States Supreme Court precedent" regarding whether MTCA's pre-suit notice requirement applies to government employee's indemnity claim).

The MTCA requires that "any person having a claim under this chapter" must file a notice of claim with the chief executive officer of the governmental entity at least ninety days before bringing suit. MISS. CODE ANN. § 11-46-11(1). "Claim" is defined as "any demand to recover damages from a governmental entity as compensation for injuries." *Id.* at § 11-46-1(a). "Injury" is defined as "death, injury to a person, damage to or loss of property or any other injury that a person may suffer that is actionable at law or in equity." *Id.* at § 11-46-1(h).

Because the Engineers' claim for declaratory relief is not a "demand to recover damages," it is not a claim under the MTCA requiring pre-suit notice. However, because their indemnity claim seeks to recover damages for attorneys' fees and expenses incurred in defending against Western Surety's claims and for any judgment rendered against them, the Court must determine whether the damages sought are "compensation for injuries."

Compensation refers to the "[p]ayment of damages … by a person who has caused injury to another." *Compensation*, BLACK'S LAW DICTIONARY (12th ed. 2024). Injury is the "violation of another's legal right, for which the law provides a remedy; a wrong or injustice." *Injury*, BLACK'S LAW DICTIONARY (12th ed. 2024). The indemnification claim here is not based on allegations that the County violated the Engineers' legal rights or committed a wrong or injustice

against them; rather, the County's obligation to indemnify the Engineers arises under statute and does not require any wrongful act or omission by the County.

More, the purpose of the notice requirement supports the conclusion that it is not intended to apply to indemnity claims under §11-46-7(3). "The purpose of notice of claim is to provide the governmental entity with timely notice of a claim against it so that it may 'take corrective action as soon as possible when necessary' and settle the claim prior to litigation when appropriate." *Feola v. Marthouse*, 359 So. 3d 222, 228 (Miss. Ct. App. 2023) (quoting *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237, 1240 (Miss. 1998)). With an indemnity claim like the Engineers' claim here, there is no corrective action to be taken, and no possibility of settling the claim prior to litigation, since litigation has already been commenced against the Engineers.

Based on the language of the MTCA, an action for indemnity under § 11-46-7(3), although invoking a right granted by the MTCA, is not a "claim" under the MTCA for which pre-suit notice is required. So, the Court will not dismiss the Engineers' declaratory judgment action or their indemnity action for failure to provide pre-suit notice.

### 2. Employment status

The County argues that "[b]ecause Strong and Neal were independent contractors and not employees as clearly defined by the MTCA, dismissal is required as the County is immune and under positively no duty to defend nor indemnify Strong or Neal." Doc. #100 at 25–26. The County contends they are independent contractors because "the workers on the project were the Engineers' employees, not the County's," "the Engineers were responsible for obtaining their own equipment to complete the project and did not use any County equipment," "the Engineers were engaged in the distinct occupation of engineering, which requires a degree of specialized skill, the work was part of their own separate regular business and not the regular business of the County,

19

… the Engineers were engaged for a limited amount of time and solely on the state aid project," and "the County had no right to employ or discharge the Engineers' employees and had no right to set or pay the wages of the Engineers' employees." *Id*. at 27–28.

The Engineers respond that "[their] employment as county engineer … falls squarely within the MTCA's definition of 'employee'" because "[t]he Chickasaw County Board of Supervisors entered into an 'employment contract' with [them], 'employing [them] as State Aid County Engineer;'" "[a]s county engineer, [they] acted for and on behalf of [Chickasaw County] as a whole;" and "Mississippi courts have repeatedly analyzed claims against a county and its county engineer under the MTCA." Doc. #111 at 14 (internal quotation marks and citations omitted).

The County replies that "the Engineers solely rely upon four cases where a county engineer's status as an employee versus as an independent contractor was not at issue." Doc. #114 at 11.

> The MTCA defines "employee" as:
>
> any officer, employee or servant of the State of Mississippi or a political subdivision of the state, including elected or appointed officials and persons acting on behalf of the state or a political subdivision in any official capacity, temporarily or permanently, in the service of the state or a political subdivision whether with or without compensation … [but t]he term "employee" shall not mean a person or other legal entity while acting in the capacity of an independent contractor under contract to a state or a political subdivision[.]

MISS. CODE ANN. § 11-46-1(f).

"An independent contractor," as opposed to an employee, is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Hill v. City of Horn Lake*, 160 So. 3d 671, 676 (Miss. 2015) (internal quotation marks omitted) (quoting

20

*Richardson v. APAC-Miss., Inc.*, 631 So. 2d 143, 148 (Miss. 1994)). "[T]he difference between a master-servant relationship and an independent-contractor relationship is that an employer in a master-servant relationship has control of, or the right to control, the employee in the details of the work." *Id.*

"Mississippi law sets forth seven factors to consider in making th[e] determination" whether a person is an employee or independent contractor:

(1) The extent of control exercised over the details of the work;
(2) Whether or not the one employed is engaged in a distinct occupation or business;
(3) The skill required in the particular occupation;
(4) Whether the employer supplies the tools and place of work for the person doing the work;
(5) The length of time for which the person is employed;
(6) The method of payment, whether by the time or by the job; and
(7) Whether or not the work is a part of the regular business of the employer.

*Shelter Mut. Ins. Co. v. Double J Timber Co.*, 844 F. App'x 700, 703–04 (5th Cir. 2021) (quoting *Miss. Emp't Sec. Comm'n v. PDN, Inc.*, 586 So. 2d 838, 841–42 (Miss. 1991)). "The primary consideration, however, 'is the right to or degree of control.'" *Id.* at 704 (quoting *PDN*, 586 So. 2d at 842).

To the extent the Engineers argue they are employees based on the language of the County's orders, specifically the references to an "employment contract" and "employing" Neal and Strong, such language is not dispositive. The Mississippi Supreme Court has indicated that an independent contractor may be "employed," or have an "employment contract," although not an employee. *See Conley v. Warren*, 797 So. 2d 881, 882 (Miss. 2001) ("employment contract" may have created independent contractor relationship); *Heirs & Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist.*, 743 So. 2d 311, 318 (Miss. 1999) (referring to "employer of an independent contractor").

21

The Engineers' argument that they are employees because under statute, to receive state aid funds, a county must "employ[] a county engineer to act for and on behalf of the county as a whole," MISS. CODE ANN. § 65-9-13(b), is not enough to establish that they are employees under the MTCA. The MTCA's definition of employee covers persons "acting on behalf of the state or a political subdivision in any official capacity," but *not* "while acting in the capacity of an independent contractor under contract to a state or a political subdivision." While it is undisputed that the Engineers were acting on behalf of the County, they also must have been doing so as employees rather than independent contractors to fall under the MTCA.

The Engineers are correct that Mississippi state courts appear to have assumed county engineers to be employees under the MTCA. *See, e.g.*, *McGee*, 350 So. 3d at 247 (tort claim against county and county engineer in his representative capacity governed by MTCA); *Springer*, 231 So. 3d at 1070 (MTCA's pre-suit notice requirements apply to tortious-interference claim against county engineer); *Jenkins*, 904 So. 2d at 1211–12 (county engineer not liable under MTCA for dangerous condition of which he did not have notice). However, because in those cases the employment status of the engineers was not challenged, they do not address much less determine whether the engineer in each instance was an employee or independent contractor. *See Alias v. City of Oxford*, 70 So. 3d 1114, 1118 (Miss. Ct. App. 2010) ("It is a long-standing legal principle that a decision is not precedent for a legal point if that point is not considered by the reviewing court.") (citing *Craig v. Brown & Williamson Tobacco Corp.*, 200 So. 446, 447 (Miss. 1941)). And, because the issue of employment status depends on the specific facts of the relationship in question, the Court declines to presume that just because the county engineers in the cases the defendants cite are employees, all county engineers are employees. Instead, the Court must determine based on the factual allegations in this case whether the Engineers were employees or

22

independent contractors.

As mentioned above, the Engineers allege they were employed as engineers by the County. Doc. #95 at 2. Attached to Western Surety's complaint, and referenced in the Engineers' third-party complaint, are orders of the County's Board of Supervisors stating that "the Board now desires to employ" the Engineers. Doc. #77-1 at PageID 1301; Doc. #77-3 at PageID 1315.[19] The contract between Neal and the County states that Neal agrees to "perform the engineering services in accordance with the State Aid Engineer's Rules and Regulations." Doc. #77-1 at PageID 1302. The contract also specifies that the State Aid Engineer will reimburse the County for Neal's services on a fee basis, based on a fixed percentage of the construction costs of State Aid projects, and the County will distribute those funds to Neal. *Id*. The contract between the County and Strong contains the same language. Doc. #77-3 at PageID 1316. No other contract between the County and Neal, or between the County and Strong, is attached to or referenced in the third-party complaint.

Based on the Engineers' contracts with the County, some factors appear to weigh in favor of independent contractor status—specifically, that they engaged in highly skilled work and were paid by the job rather than on an hourly or salary basis. However, other factors, including whether the County supplied the tools and place of work, the length of time for which the Engineers were employed, and most importantly, the extent of the County's control over the details of the Engineers' work, cannot be determined based on the third-party complaint and the documents incorporated by reference therein.

Though the County argues that the workers on the Project were the Engineers' employees,

---

[19] Because the third-party complaint references and attaches the County's contracts and related documents, Doc. #95 at 2, and because such documents are significant to the Engineers' claims that they were County employees and therefore entitled to a defense and indemnification, the Court considers these documents in evaluating the County's motion.

23

not its employees; the Engineers obtained their own equipment and did not use any County equipment; and the Engineers were engaged for a limited amount of time and solely on the Project, these assertions are not supported by the allegations in the third-party complaint or the documents it references.[20] And as to the County's argument that it "had no right whatsoever to control the Engineers' work or that of their employees" because "only [the Office of State Aid Road Construction] had the right to control the Engineers' work," that the Engineers were subject to the State Aid Road Construction Rules and Regulations does not warrant a conclusion that the County had no right to control the details of their work.

In short, the pleadings do not provide a basis for the Court at this stage to find that the Engineers were independent contractors rather than employees subject to the MTCA.[21]

### 3. Waiver

The County argues that "Strong waived any protections under the MTCA by answering, participating in discovery, and proceeding in this action for over six months without raising nor asserting such;" "MTCA defenses are subject to waiver;" and "Strong's conduct in this case constituted waiver of any MTCA applicability or defenses he and Neal now claim." Doc. #100 at 28–30 (internal quotation marks and citation omitted).

The Engineers respond that "[t]he Fifth Circuit has repeatedly rejected waiver arguments

---

[20] To the extent the County cites the factual allegations in Western Surety's governing complaint, in ruling on a motion for judgment on the pleadings as to the Engineers' third-party complaint, the Court does not accept the allegations in Western Surety's governing complaint as true. While in considering a motion to dismiss a third-party complaint, all factual allegations in the third-party complaint must be taken as true, *Shannon v. Massachusetts Bonding & Ins. Co.*, 62 F. Supp. 532, 537 (W.D. La. 1945); it does not follow that factual allegations in the complaint on which the third party complaint is derived must also be taken as true. And, to the extent the County relies on facts alleged or established in the state court litigation to support its arguments, the Court may not take judicial notice of such. *PNC Bank*, 136 F.4th at 574–75.

[21] The County also argues for the first time in its reply that "the Engineers cannot be indemnified for their own negligence in this action pursuant to the MTCA, even if they were employees." Doc. #114 at 8 (emphasis omitted) (citing *Lefoldt v. Rentfro*, 241 So. 3d 565, 566–67 (Miss. 2017)). Because as mentioned above, the Court "do[es] not entertain arguments raised for the first time in a reply brief," *Newman*, 23 F.4th at 402 n. 47 (internal quotation marks omitted), it will not address this argument.

when a defendant raised an affirmative defense for the first time at summary judgment—or an event later;" "the operative complaint in this case is Western Surety's Third Amended Complaint;" they "asserted several affirmative defenses related to the MTCA in their Answer and Affirmative Defenses to the Third Amended Complaint;" and "whether [they] waived any MTCA defenses to Western Surety's claims is immaterial to their Second Amended Third-Party Complaint." Doc. #111 at 18–19.

The County replies that "Strong did not raise any applicability of the MTCA at a pragmatically sufficient time but instead actively participated in all aspects of this case for over six months before mentioning the MTCA, prejudicing both the County and Western [Surety]." Doc. #114 at 15 (internal quotation marks and citation omitted) (emphasis omitted).

In the third-party complaint, the Engineers do not raise the MTCA as an affirmative defense but rather as the basis for their claim that the County is required to defend and indemnify them. So, the third-party complaint will not be dismissed based on waiver.

**V**
**Conclusion**

The County's motion for judgment on the pleadings [99] is **DENIED**.

**SO ORDERED**, this 25th day of March, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**

25